**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Isabel Balbontin, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PPS House Buyers LLC, and Bayou City Realty, LLC,<br><br>Defendants. | CASE NO.<br><br>PLAINTIFF'S CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1.      Isabel Balbontin ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against PPS House Buyers LLC ("PPS") and Bayou City Realty ("Bayou") (together, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.      Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service without prior express consent.

3.      Specifically, Defendants routinely and repeatedly call consumers' cellular telephone numbers—like Plaintiff—while leaving artificial or prerecorded voice messages to suspected homeowners in an effort to either purchase their property or gauge their interest in Defendants' real estate services.

4.      Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by placing more than one advertisement or marketing telephone call to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission

required by the TCPA.

5.     Lastly, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**Parties**

6.     Plaintiff is a natural person who at all relevant times resided in Los Angeles, California.

7.     PPS is a Texas limited liability company that runs a real estate business headquartered in Houston, Texas.

8.     Joel Medrano is the owner and manager of PPS.

9.     PPS also identifies its team of employees, including Joel Medrano as "CEO & President," and "Danny DiPetta" and Hunter Hill as "Acquisitions Agent[s]."

10.     Bayou is a Texas limited liability company that runs a real estate business headquartered in Houston, Texas.

11.     Joel Medrano and Daniel DiPetta are the owners and managers of Bayou.

12.     Hunter Hill and Daniel DiPetta are also the "team" employed at Bayou.[1]

13.     According to the Texas Real Estate Commission, Hunter Hill and Daniel DiPetta are licensed real estate sales agents with Bayou serving as their sponsoring broker.[2]

---

[1]     https://www.bayoucityrealty.com/about/ (last visited March 26, 2025).

[2]     https://www.trec.texas.gov/apps/license-holder-search/?detail_id=1000288595 (last visited March 26, 2025); https://www.trec.texas.gov/apps/license-holder-search/?detail_id=1000180381 (last visited March 26, 2025).

14.      Beyond overlapping ownership and management, Bayou and PPS share the same mailing address, business address, and registered agent.

### Jurisdiction and Venue

15.      This Court has subject matter jurisdiction under 47 U.S.C. §§ 227(b)(1)(a)(iii) and 227(c)(5), and 28 U.S.C. § 1331.

16.      Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as Defendants are based in this district, and as a significant portion of the events giving rise to this action occurred in this district.

17.      In particular, Defendants directed their solicitation calls and artificial or prerecorded voice messages to Plaintiff's telephone from this district.

### Factual Allegations

18.      Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(310) 497-XXXX.

19.      Plaintiff uses her cellular telephone as her personal residential telephone number.

20.      In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

21.      Plaintiff's cellular telephone number has been registered with the DNC Registry since October 17, 2007.

22.      Plaintiff was assigned her cellular telephone number in 2019, and upon assignment of the telephone number, Plaintiff attempted to register her telephone number with the DNC Registry in 2019 and was informed that her telephone number was already registered with the

DNC Registry, and that no further action needed to be taken by Plaintiff to maintain her registration.

23.    Plaintiff has maintained the registration of her telephone number on the DNC Registry through the present date.

24.    Beginning around 2021, and repeatedly throughout 2024 and continuing through the present on an intermittent basis, Plaintiff received in excess of a dozen telephone calls from a rotating series of telephone numbers, with numerous prerecorded voice messages delivered to her cellular telephone.

25.    In these prerecorded voice messages, the caller did not identify themselves other than using the name "Joel" or "Yash" and inquired whether Plaintiff would be willing to sell her property to the caller or otherwise use their real estate services:





26.     Samples of these voice messages can be found <u>HERE</u>.

27.     The purpose of the text messages at issue was to advertise and to market Defendants' real estate business or services.

28.     Plaintiff did not request any services discussed in the subject telephone calls or voicemail messages.

29.     Plaintiff is not, and was not, interested in Defendants' services or marketing

30.     Plaintiff is not, and was not, interested in selling her home, or purchasing another home.

31.     Plaintiff did not recognize the names or phone numbers associated with these messages, and had not made any inquiries regarding the purchase or sale of real estate.

32.     Solely for the purpose of identifying the entity responsible for sending these messages, Plaintiff sent a text message to (346) 597-1970 asking for its website.

33.     That phone number responded by identifying PPS:



34.    Plaintiff did not recognize the sender of these text messages.

35.    Upon information, investigation, and good faith belief, PPS is a real estate investor that seeks to solicit homeowners to sell their property to PPS, or use Defendants' real estate services in a real estate property sale transaction

36.    In doing so, PPS offers to purchase homeowners' properties for cash, offering to take care of all aspects of the transaction to facilitate a quick transaction without the need for a real estate agent or MLS listing.[3]

37.    PPS necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with potential third-party

---

[3]    https://ppshousebuyers.com/ (last visited March 26, 2025).

buyers—with their communications to Plaintiff.[4]

38.    PPS advertises that it also handles moving for its customers, as evidenced by the following promotion:[5]



39.    Moreover, when asked, PPS acknowledges that it "take[s] care of everything related to the purchase like title and moving":[6]



40.    Moreover, on a page titled "Services," PPS touts that it can help homeowners with

---

[4]    *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (last visited March 26, 2025) (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing] the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.").

[5]    *Supra n.1.*

[6]    *Id.*

a variety of "property issues" and "title needs," all while explicitly stating "from handling all of the paperwork to getting you moved, PPS House Buyers is here to help."[7]

41.    Upon information and belief, PPS seeks to supplant the role of a traditional real estate agent while providing many of the same services as a real estate agent, and in exchange for doing so, are compensated by obtaining a homeowner's property at a reduced price, and thereafter either (1) selling it at an inflated price; or (2) renting the property as a landlord.

42.    Upon information and belief, in exchange for providing these services, PPS pays substantially below fair market value for the homes they seek to purchase.

43.    As a result, PPS would be (and, upon belief and information, is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

44.    PPS provides this value proposition through a "closing cost calculator" that touts how transacting with PPS will allow a homeowner to avoid paying commissions or costs to sell their home.[8]

45.    Therefore, upon information and belief, PPS is a real estate wholesaler, which is a strategy in which a wholesaler seeks to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into PPS's shoes and acquire the house instead, with the difference in price solely allocated to PPS (or Defendants) as profit, instead of the homeowner.

---

[7]    https://ppshousebuyers.com/services/ (last visited March 26, 2025).

[8]    https://ppshousebuyers.com/blog/seller-closing-cost-calculator-in-houston/    (last visited March 26, 2025).

46.     Through LinkedIn posts by Joel Medrano—owner and manager of PPS—PPS seeks employees who would be willing to work as lead generators for the company, noting that they would be expected to make in excess of a hundred calls a day to solicit clients:[9]



47.     Bayou provides conventional real estate representation as a brokerage, while also touting that "[w]hat separates Bayou City Realty from other brokerages across Houston is that we are active investors in the real estate market. Our agents have extensive knowledge of the Greater Houston Area because we actively invest in neighborhoods across the area. We started the brokerage because we felt we had more knowledge and skill at negotiations than the agents we were hiring to sell our investment properties. Let us use our vast knowledge of the market and negotiation skills to help you buy or sell your next property."[10]

48.     Bayou continues: "Additionally, if you are looking to get into real estate

---

[9]      https://www.linkedin.com/feed/update/urn:li:activity:7305683883822301185/ (last visited March 26, 2025).

[10]     https://www.bayoucityrealty.com/about/ (last visited March 26, 2025).

investment, we can help with that too. We have experience in project management, design, and cost evaluations. We can help you determine if a property has the potential to be a great investment and we can walk you through the steps necessary to complete your fix and flip or buy and hold investment. Our agents have flipped hundreds of houses in the Greater Houston area, and you can utilize our expertise to evaluate your next investment opportunity."[11]

49.     Given Daniel DiPetta's and Hunter Hill's involvement with PPS as, at minimum, acquisition agents, they have acute knowledge as to PPS's telemarketing operations due to their role in acquiring properties to wholesale.

50.     Therefore, upon information and belief, given the significant overlap of ownership, employees, and management between Defendants, the sharing of offices, the fact that they operate within the same real estate arena, and that Bayou touts its PPS-facing operations as a boon to potential consumers, upon information and belief, Bayou and PPS operate their telemarketing campaigns as a joint enterprise.

51.     Moreover, upon information and belief, to the extent that a consumer expresses interest in selling their home (or buying one) in response to PPS's telemarketing messages, PPS then refers those consumers to Bayou for conventional real estate representation.

52.     Moreover, Daniel DiPetta and Hunter Hill are licensed real estate agents who list Bayou as their sponsoring broker,[12] and therefore, use Bayou to facilitate the real estate transactions they conduct on behalf of PPS.

---

[11]     *Id.*

[12]     https://www.trec.texas.gov/apps/license-holder-search/?detail_id=1000180381 (last visited March 26, 2025); https://www.trec.texas.gov/apps/license-holder-search/?detail_id=1000288595 (last visited March 26, 2025).

53.     Moreover, Bayou itself has "Ronald L Miranda" as its "designated broker."[13]

54.     Mr. Miranda touts that "[s]ince 2005, I've also been involved in real estate investing, owner finance, subject-to, wholesale real estate and fix-and-flip projects. I currently manage a vibrant Facebook group, the Real Estate Investor and Wholesale Club, with over 16,000 members and growing steadily. We actively seek to add new members who bring valuable deals and foster collaboration among investors."[14]

55.     Therefore, upon information and belief, Bayou has knowledge of—and focuses its business on—the same real estate investment solicitations that PPS does, and is therefore liable as either a joint sender of the communications at issue, or because PPS had actual or apparent authority to send those messages on its behalf.

56.     Moreover, Bayou ratified PPS's conduct by both accepting the benefits of PPS's transactions, by accepting compensation for transactions funneled to Bayou, or fees for transactions that Bayou facilitates for PPS, and by openly touting PPS's actions to promote Bayou to consumers.

57.     Plaintiff believes she has received well over a dozen telemarketing and solicitation calls from Defendants that were delivered with the use of an artificial or prerecorded voice.

58.     Upon information and good faith belief, as a real estate agency, Bayou sought to represent Plaintiff in either a purchase of a new home or a sale of her home, in exchange for a commission or other valuable consideration.

59.     The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National

---

[13]     https://www.trec.texas.gov/apps/license-holder-search/?detail_id=1000288345     (last visited March 26, 2025).

[14]     https://www.linkedin.com/in/ronlmiranda/ (last visited March 26, 2025).

Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id*. at 3793-94.

60.    In other words, the FCC has expressly declared that Defendants' conduct qualifies as a regulated telephone solicitation which accordingly must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

61.    Plaintiff did not give Defendants prior express consent or prior express written consent to place calls to her cellular telephone number by using an artificial or prerecorded voice.

62.    Upon information and belief, and in light of the nature and character of the voice messages at issue, including the delivery of repeated identical voicemail messages, Defendants used a prerecorded voice to deliver calls to Plaintiff's cellular telephone number.

63.    Upon information and belief, Defendants placed the calls to Plaintiff's cellular telephone number for non-emergency purposes.

64.    Upon information and belief, Defendants placed the calls to Plaintiff's cellular telephone number voluntarily.

65.    Upon information and belief, Defendants placed the calls to Plaintiff's cellular telephone number under their own free will.

66.     Upon information and belief, Defendants had knowledge that they were using an artificial or prerecorded voice to place their calls to Plaintiff's cellular telephone number.

67.     Upon information and belief, Defendants intended to use an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

68.     The purpose of the solicitation calls at issue was to advertise and to market Defendants' business or services.

69.     Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

70.     As a result, PPS either (1) solicited Plaintiff to sell her home to them at a discount in order for Defendants to resell or rent Plaintiff's home; (2) solicited Plaintiff to submit her information to Defendants' lead generation service and, if Plaintiff expressed an interest in selling her home, Defendants would then sell that via an assignment contract or immediate purchase-and-resale to investors for a profit; or (3) if Plaintiff did not want to sell her home but otherwise expressed interest in a represented real estate transaction, solicited Plaintiff to use Bayou for "conventional" real estate brokerage representation.

71.     Plaintiff did not give Defendants prior express invitation or permission to place advertising or telemarketing calls to her cellular telephone number.

72.     Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

73.     Plaintiff suffered additional harm due her frustration and difficulty in identifying the entity or entities and persons responsible for the unwanted advertisement or marketing telephone calls to her cellular telephone number.

74.     Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

### Class Action Allegations

75.     Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Robocall Class:**

All persons and entities throughout the United States (1) to whom PPS House Buyers LLC or Bayou City Realty, LLC placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to a customer of PPS House Buyers LLC or Bayou City Realty, LLC, (2) by using an artificial or prerecorded voice, (3) from four years preceding the date of this complaint through the date of class certification.

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom PPS House Buyers LLC or Bayou City Realty, LLC placed, or caused to be placed, more than one call within a 12-month period, promoting PPS House Buyers LLC's or Bayou City Realty, LLC's, or their business partners' goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before PPS House Buyers LLC or Bayou City Realty, LLC placed, or caused to be placed, at least two of the telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons and entities throughout the United States (1) to whom PPS House Buyers LLC or Bayou City Realty, LLC placed, or caused to be placed, more than one call within a 12-month period, promoting PPS House Buyers LLC's or Bayou City Realty, LLC's, or their business partners' goods or services, (2) where the subject calls did not state the name of the individual caller, the name of PPS House Buyers LLC or Bayou City Realty, LLC, and a telephone number or address at which PPS House Buyers LLC or Bayou City Realty, LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

76.     Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

77.    Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

78.    The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

79.    The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

80.    In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

81.    Plaintiff's claims are typical of the claims of the members of the Classes.

82.    As they did for all members of the Robocall Class, Defendants placed telephone calls by using an artificial or prerecorded voice to Plaintiff's telephone number absent prior express consent.

83.    As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation telephone calls to Plaintiff's telephone number more than thirty days after Plaintiff registered their cellular telephone numbers with the DNC Registry.

84.    As they did for all members of the Sender Identification Class, Defendants delivered solicitation telephone calls to Plaintiff's telephone number where the subject telephone calls did not state the name of the individual caller, the name of PPS, and a telephone number or address at which PPS may be contacted.

85.    Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

86.    Plaintiff's claims are based on the same theories as are the claims of the members

of the Classes.

87.    Plaintiff suffered the same injuries as the members of the Classes.

88.    Plaintiff will fairly and adequately protect the interests of the members of the Classes.

89.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

90.    Plaintiff will vigorously pursue the claims of the members of the Classes.

91.    Plaintiff has retained counsel experienced and competent in class action litigation.

92.    Plaintiff's counsel will vigorously pursue this matter.

93.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

94.    The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

95.    Issues of law and fact common to all members of the Classes include:

   a.    For the Robocall Class, Defendants' practice of placing telephone calls to cellular telephone numbers, with the use of an artificial or prerecorded voice, absent prior express consent;

   b.    For the Federal Do-Not-Call Registry Class, Defendants' practice of placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

   c.    For the Sender Identification Class, Defendants' practice of placing telephone calls, for solicitation purposes, without identifying the name of the individual caller, the name of PPS, and a telephone number or address

at which PPS may be contacted;

d.    Defendants' conduct, pattern, and practice as it pertains to delivering artificial or prerecorded voice solicitation messages;

e.    Whether Bayou is responsible for the conduct of PPS as either a joint venture, or based on agency theories;

f.    Defendants' violations of the TCPA; and

g.    The availability of statutory penalties.

96.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

97.    If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

98.    The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

99.    The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

100.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

101.    The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

102.    The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

103.    There will be no extraordinary difficulty in the management of this action as a class action.

104.    Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**On behalf of the Robocall Class**

105.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-104.

106.    Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior express consent.

107.    As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff, and the members of the Robocall Class, are entitled to damages in an amount to be proven at trial.

108.    In the alternative, PPS violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior express consent, and Bayou is liable for PPS's violations because (1) Bayou is owned and operated by the same persons, and conducting the same business; (2) Bayou ratified PPS's conduct by either accepting leads generated by PPS's telemarketing campaign, agreeing to receive revenue that arouse out of PPS's telemarketing campaign, and promoting PPS's conduct in its communications to consumers; and (3) PPS acted with actual authority on behalf of Bayou in delivering artificial or prerecorded voice messages to consumers' cellular telephone numbers absent prior express consent.

109.    As a result, Bayou would also be vicariously liable for PPS's conduct.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

110.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-104.

111.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

112.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

113.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

114.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

115.     Defendants violated 47 U.S.C. § 227(c)(5) because they placed, or caused to be placed, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200.

116.     In the alternative, PPS violated 47 U.S.C. § 227(c)(5) by delivering more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200(c), and Bayou is liable for PPS's violations because (1) Bayou is owned and operated by the same persons, and conducting the same business; (2) Bayou ratified PPS's conduct by either accepting leads generated by PPS's telemarketing campaign, agreeing to receive revenue that arouse out of PPS's telemarketing campaign, and promoting PPS's conduct in its communications to consumers; and (3) PPS acted with actual authority on behalf of Bayou in delivering solicitation calls in violation of 47 C.F.R. § 64.1200(c).

117.     As a result, Bayou would also be vicariously liable for PPS's conduct.

**Count III**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

118.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-104.

119.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

120.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

121.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

122.    Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

123.    Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

124.    In the alternative, PPS violated 47 U.S.C. § 227(c)(5) by delivering more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4), and Bayou is liable for PPS's violations because (1) Bayou is owned and operated by the same persons, and conducting the same business; (2) Bayou ratified PPS's conduct by either accepting leads generated by PPS's telemarketing campaign, agreeing to receive revenue that arouse out of PPS's telemarketing campaign, and promoting PPS's conduct in its communications to consumers; and (3) PPS acted with actual authority on behalf of Bayou in delivering solicitation calls in violation of 47 C.F.R. §

64.1200(d)(4).

125.    As a result, Bayou would also be vicariously liable for PPS's conduct.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action;

b.    Designating Plaintiff as a class representative of the proposed Class under Federal Rule of Civil Procedure 23;

c.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.    Adjudging and declaring that Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(c)(5);

e.    Enjoining Defendants from continuing their violative behavior, including placing telephone calls with the use of an artificial or prerecorded voice to consumers without prior express consent, and placing solicitation calls to telephone numbers registered with the DNC Registry for at least thirty days;

f.    Awarding Plaintiff and the members of the Robocall Class damages under 47 U.S.C. § 227(b)(3)(B);

g.    Awarding Plaintiff and the members of the Robocall Class treble damages under 47 U.S.C. § 227(b)(3)(C);

h.    Awarding Plaintiff and the members of the Federal Do-Not-Call Registry Class and Sender Identification Class damages under 47 U.S.C. § 227(c)(5)(B);

i.    Awarding Plaintiff and the members of the Federal Do-Not-Call Registry

Class and Sender Identification Class treble damages under 47 U.S.C. § 227(c)(5)(C);

j.  Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

k.  Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

l.  Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: April 7, 2025

/s/ Alex D. Kruzyk
Alex D. Kruzyk *(Attorney in Charge)*
Texas Bar No. 24117430
S.D. Tex. ID No. 3412403
Bryan A. Giribaldo
Texas Bar No. 24124547
S.D. Tex. ID No. 3657465
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

*Counsel for Plaintiff and the proposed class*